## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| BRIAN POLLARD, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DAEDONG-USA, INC., d/b/a KIOTI TRACTOR DIVISION, and DAE DONG, INC., <br><br> Defendant. | CASE NO. <br><br> JUDGE <br><br> **DEFENDANT DAEDONG-USA, INC.'S NOTICE OF REMOVAL** |

Defendants Daedong-USA, Inc. and Dae Dong, Inc.[1] (together, "DD-USA") hereby remove to this Court the action more fully described below pursuant to 28 U.S.C. § 1446(a), the Class Action Fairness Act ("CAFA") (codified in scattered sections of 28 U.S.C., including 28 U.S.C. § 1332). DD-USA submits the following in support of removal and this Court's jurisdiction:

### I. FACTUAL ALLEGATIONS[2]

1. DD-USA is a distributor of tractors and utility vehicles, engines, attachments, implements and accessories. (Compl. at ¶ 24.)

2. Plaintiff Brian Pollard ("Plaintiff") was employed by DD-USA. (*Id.* at ¶ 76.)

---

[1] According to the website for the North Carolina Secretary of State, Dae Dong, Inc. was dissolved on May 5, 2005, nearly two decades prior to the incident that forms the basis for this lawsuit, and therefore Dae Dong, Inc. is not a proper defendant in this action.
[2] DD-USA assumes Plaintiff's allegations as true for purposes of removal only.

3. According to Plaintiff, DD-USA "held in its possession certain personally identifiable information and protected health information of Plaintiff and other employees of Defendants, the putative class members." (the "Private Information"). (*Id.*, at ¶ 1) (internal parentheticals omitted).

4. Plaintiff states that "as a condition of employment, [DD-USA] require[s] each employee to provide (and Plaintiff did provide) [DD-USA] with sensitive, personal, and private information…." (*Id.* at ¶ 25.)

5. Plaintiff then alleges that DD-USA "agreed to and undertook legal duties to maintain the protected health and personal information … safely, confidentially, and in compliance with all applicable laws, including [HIPAA]." (*Id.* at ¶ 27.)

6. Citing language from a notice posted to the Office of the Maine Attorney General, Plaintiff claims DD-USA suffered a data breach during which cyber criminals gained unauthorized access to the Private Information of Plaintiff and Class Members (the "Data Breach"). (*Id.* at ¶¶ 29–30.)

7. Plaintiff claims that the Data Breach affected the Private Information of at least 10,643 individuals, who together comprise the members of the class (the "Class Members") (*Id.* at ¶ 109.)

8. Plaintiff alleges that the categories of Private Information affected by the Data Breach include, but are not limited to: names, contact information, birthdays, government-issued identification documents, SSNs, bank and payment numbers, medical information, health insurance information, usernames, passwords, and other work-related information. (*Id.* at ¶ 2.)

9. Plaintiff states that DD-USA "had obligations created by HIPAA, contract, industry standards, state statutes, common law, and representations made to Class Members, to keep Class members' Private Information confidential and to protect it from unauthorized access and disclosure." (*Id.* at ¶ 34.)

10. Plaintiff claims that the Data Breach occurred in January 2024, that DD-USA became aware of the Data Breach in October 2024, and that Plaintiff received a notice regarding the Data Breach from DD-USA in February 2025. (*Id.* at ¶¶ 30, 33.)

11. Plaintiff alleges that the Data Breach was the result, in part, of DD-USA's failure to comply with FTC guidelines concerning data security. (*Id.* at ¶¶ 41–48.)

12. Plaintiff further believes that DD-USA's alleged failure to comply with industry standards, such as those set forth in the NIST Cybersecurity Framework Version 2.0, contributed to the Data Breach. (*Id.* at ¶¶ 49–53.)

13. As a final theory of evidentiary failures leading to the Data Breach, Plaintiff alleges that DD-USA failed to comply with HIPAA's requirements governing the protection and safeguarding of protected health information. (*Id.* at ¶¶ 54–58.)

14. Plaintiff claims that, as a result of the Data Breach, Plaintiff and Class Members are now at a higher risk of identity theft and fraud. (*Id.* at ¶¶ 62–74)

15. Plaintiff also cites to the loss in value of his and Class Members' Private Information, claiming that each individual record of Private Information is worth as much as $363. (*Id.* at ¶ 71.)

16. Plaintiff claims to have suffered actual injury from the theft of Private Information, damages to and diminution in the value of Private Information, lost time, annoyance, interference, inconvenience, and impending harm from the now-increased risk of fraud and identity theft. (*Id.* at ¶¶ 82–87.)

## II. PROCEDURAL BACKGROUND

17. On March 26, 2025, Plaintiff commenced a civil action in the Wake County, North Carolina Superior Court Division, captioned as *Pollard v. Daedong-USA, Inc., et. al*, Case No. 25CV010672-910. A copy of the Summons and Complaint is attached as Exhibit "**A**."

18. DD-USA was served with the Summons and Complaint on April 28, 2025, and therefore, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

19. Pursuant to 28 U.S.C. § 1441(a), venue is proper in the United States District Court for the Eastern District of North Carolina because this District embraces the Wake County Superior Court Division where the action was originally filed. *See* 28 U.S.C. § 129(a).

20. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff and filed with the Wake County Superior Court Division.

21. By removing the action to this Court, DD-USA does not waive any defenses, objections or motions available to it under state or federal law. DD-USA expressly reserves the right to move for dismissal of the Plaintiff's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

### III. CAFA JURISDICTION EXISTS.

22. This Court has jurisdiction over this action under CAFA. Pursuant to CAFA, a district court has removal jurisdiction in cases in which the members of the putative class classes in the aggregate are more than 100, and the aggregate claims of the class members exceed $5,000,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(d); *See Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 330 (4th Cir. 2019). Additionally, under CAFA's minimal diversity standard, any member of the class of plaintiffs must be a citizen of a different state from any defendant. *Id*.

**The Putative Class Consists of More than 100 Members.**

23. For removal under CAFA diversity jurisdiction, the proposed class must total more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

24. In the present case, Plaintiff has pled that the class size is approximately 10,643 members. (Compl. at ¶ 109.)

25. Thus, by Plaintiff's own assertions in the Complaint, this case concerns a putative class action in which Plaintiff seeks certification of a class well in excess of the statutory minimum of one hundred putative class members. *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562, 570 (E.D.N.C. 2021) (finding that defendant carried its burden to meet the jurisdictional threshold where plaintiff alleged "[t]here are well over one thousand members of the Class . . .").

**Minimal Diversity of Citizenship Exists.**

26. Diversity jurisdiction under CAFA requires only minimal diversity. "[T]o establish minimal diversity under CAFA, Advance America must demonstrate that 'any member of [the] class of plaintiffs is a citizen of a State different from any defendant.'" *Johnson v. Advance Am.*, 549 F.3d 932, 936 (4th Cir. 2008) (quoting 28 U.S.C. § 1332(d)(2)(A)).

27. Plaintiff's proposed class consists of "[a]ll persons whose Private Information was compromised because of the Data Breach reported in February of 2025." (Compl. at ¶ 106.)

28. As Plaintiff references, DD-USA published a data breach notification with the Office of the Maine Attorney General.[3] In the data breach notification, DD-USA identified 176 of the 10,643 individuals affected by the Data Breach as being residents of the state of Maine.

29. DD-USA is organized under the laws of North Carolina and its principal place of business in North Carolina. (*See* Compl. at ¶ 17.) DD-USA is a citizen of North Carolina, and has therefore demonstrated the minimal diversity required under 28 U.S.C. § 1332(d)(2).

**The Amount in Controversy Exceeds $5 Million.**

---

[3] Office of the Maine Attorney General, *Data Breach Notifications*, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/4e88deb0-1468-4236-9b22-ac33146f6f2d.html (last accessed May 15, 2025).

30. Pursuant to CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) ("To 'determine whether the matter in controversy' exceeds that sum, "the claims of the individual class members shall be aggregated.' ") (quoting 28 U.S.C. § 1332(d)(6)).

31. As detailed further below, while the actual amount in controversy is not explicitly stated in the Complaint, based on the claims alleged and a plausible expectation of damages sought, the amount at stake in this litigation undoubtedly exceeds $5,000,000.

32. "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (internal citation omitted); *see e.g.*, *Decker v. USAA Cas. Ins. Co.*, 683 F. Supp. 3d 488, 493 (M.D.N.C. 2023); (When a plaintiff's complaint does not specify damages, a court may consider "any evidence of the amount in controversy."); *Decker v. USAA Cas. Ins. Co.*, 683 F. Supp. 3d 488, 493 (M.D.N.C. 2023); *Cannon v. AutoMoney, Inc.*, 2020 WL 3105183 (M.D.N.C. May 12, 2020), *report and recommendation adopted*, 2020 WL 3104352 (M.D.N.C. June 11, 2020) ("If the amount in controversy is unclear on the face of the complaint, including where the state practice does not permit a demand for a specific sum or permits recovery of amounts in excess of the specified sum, the defendant may assert the amount in controversy in the Notice of Removal.").

33. Federal courts, including the Supreme Court, have made clear that, for CAFA removal, "because no antiremoval presumption attends cases invoking CAFA, … a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017); *accord Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

34. The well-settled test in the Fourth Circuit for calculating the amount in controversy is "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir. 1964)). "When the amount of damages a plaintiff seeks is unclear, the court may look at the entire record, including the complaint, the removal petition and affidavits and make an independent evaluation as to whether or not the jurisdictional amount is in issue." *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562, 570 (E.D.N.C. 2021) (internal citation omitted).

35. Plaintiff's Complaint is ambiguous as to the specific amount of damages claimed to have been incurred by Plaintiff or the proposed class members. Rather, Plaintiff seeks "an Order directing Defendants to pay for not less than ten years of credit monitoring services for Plaintiff and the Class; … actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined … punitive damages, … attorneys' fees and costs…". (Compl., at p. 34, *ad damnum*).[4]

---

[4] North Carolina law does not permit a plaintiff to claim a specific amount greater than $25,000 in damages. N. C. Gen. Stat. §1A-1, Rule 8(a)(2); *see, generally, Lee Elec. Constr. Inc., v. Eagle Elec., LLC*, 2003 WL 21369256 (M.D.N.C. 2003) (noting that in North Carolina "a plaintiff can plead for judgment in excess of a certain dollar amount," but is prohibited from pleading the exact amount of damages, "making it difficult to determine the exact amount in controversy [.]")

36. On its own, the request for ten years' worth of credit monitoring services for a class of 10,643 members crosses the necessary threshold of $5,000,000. While the specific cost for credit monitoring varies by provider, paid credit monitoring services for a single person can cost around $8.99–$39.95 per month.[5] Taking those figures and proliferating to 10 years' worth of services for 10,643 class members, the cost of this one demand from Plaintiff stretches anywhere from $11,481,668.40 to $51,022,542.00—far in excess of $5,000,000, even when using a low estimate.

37. Plaintiff also discusses the value of the Private Information allegedly affected by the Data Breach, and acknowledges that "Private Information can sell for as much as $363 **per record**...". (Compl. at ¶ 71) (emphasis added). *See Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 357 (E.D.N.C. 2024) (acknowledging loss in the value of individually-identifiable health information for determining the amount in controversy).

---

[5] CNBC, *How much does credit monitoring cost?*, https://www.cnbc.com/select/how-much-does-credit-monitoring-cost/ (accessed May 15, 2025); *see also* NerdWallet, *Credit Monitoring Services: Are They Worth the Cost?*, https://www.nerdwallet.com/article/finance/credit-monitoring-identity-theft-monitoring (accessed May 15, 2025) ("Credit monitoring services can cost up to $360 per year for individual plans."); *see also* LendingTree, *Is Credit Monitoring Worth It?*, https://www.lendingtree.com/credit-repair/is-credit-monitoring-worth-it/ (accessed May 15, 2025) ("Paid credit monitoring typically costs $10 to $40 a month").

38. While not exhaustive, Plaintiff alleges at least 10 broad categories of Private Information that may have been impacted by the Data Breach: names, contact information, birthdays, government-issued identification documents, SSNs, bank and payment numbers, medical information, health insurance information, usernames and passwords, and other work-related information. (Compl. at ¶ 2.) Even if each Class Member only had one record of each category affected by the Data Breach—which is unlikely as pled, given the broad language of "other medical information"—the Data Breach would still encompass 106,430 individual records of Private Information between the 10,643 Class Members. At Plaintiff's estimated value of $363 per record, the loss-of-value damages alone could reach as high as **$38,634,090.00**. Even if the actual value of each record of Private Information was one **seventh** of Plaintiff's estimate, the damages from loss-of-value alone would be in excess of $5,000,000. *See Caufield v. EMC Mortgage Corp.*, 803 F.Supp.2d 519, 527–28 (S.D.W.V. 2011) (finding that a party seeking CAFA jurisdiction may multiply the damages as to plaintiff by the size of the class if the alleged facts support that each class member was affected by defendant's actions in the same way as plaintiff.)

39. Within Plaintiff's claims for negligence, negligence *per se*, and breach of implied contract, (Counts I–III, respectively), Plaintiff seeks compensatory, consequential, punitive, and nominal damages. (Compl., at ¶¶ 129, 141, 11 of Count III.) While Plaintiff does not provide any figures for these amounts, each category pushes the amount in controversy further in excess of the $5,000,000 requirement under CAFA.

40. Plaintiff's final cause of action, unjust enrichment, includes a plea that DD-USA "be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that [DD-USA] unjustly received from [Plaintiff and Class Members]. In the alternative, [DD-USA] should be compelled to refund the amounts that Plaintiff and Class Members overpaid for [DD-USA]'s services." (*Id.* at ¶ 27 of Count IV.) *See Pender v. Bank of America Corp.*, 788 F.3d 354, 366 (4th Cir. 2015) (finding that damages for a disgorgement claim stem from the defendant's ill-gotten profits, even where a plaintiff has not suffered any financial loss). To support this claim, Plaintiff alleges that DD-USA accepted payments from Plaintiff and Class Members, had an obligation to use a portion of those payments for data security, and was unjustly enriched by retaining the payments without spending more on adequate data security. (Compl., at ¶¶ 15–27 of Count IV.) While again failing to allege any specific amount of proceeds allegedly retained by DD-USA or the amount Plaintiff and Class Members allegedly overpaid, the damages unique to Count IV also further extend the amount in controversy above the CAFA minimum.

41. While Plaintiff seeks an award of attorneys' fees and costs, any specific basis for an award of attorneys' fees is unclear on the face of the Complaint. (Compl., at p. 34, *ad damnum*.) If Plaintiff intends to assert a claim for attorneys' fees based on a statute, contract or otherwise, then attorneys' fees are properly considered part of the amount in controversy and further extend the amount in controversy past the CAFA minimum. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) (including attorney's fees in the amount in controversy calculation when they are expressly provided for by a statute or contractual provision).

42. Accordingly, upon reviewing any plausible calculation of the damages sought by Plaintiff on his and Class Members' behalf, plus reasonable attorney's fees, the amount in controversy in this action exceeds $5,000,000.00 and the case is properly removable under CAFA.

Respectfully submitted, this the 23rd day of May, 2025.

THARRINGTON SMITH, LLP

*/s/ Colin Shive*
Colin A. Shive
N.C. Bar No. 43202
F. Hill Allen
N.C. Bar No. 18884
150 Fayetteville Street, Suite 1900
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
hallen@tharringtonsmith.com
cshive@tharringtonsmith.com


McGlinchey Stafford, PLLC

*/s/ Megan S. Ben'Ary*
Megan S. Ben'Ary
Virginia Bar No. 47439
1275 Pennsylvania Ave., NW, Suite 420
Washington, DC 20004
Phone: (202) 802-9949
mbenary@mcglinchey.com
*\*Notice of Special Appearance forthcoming*

*/s/ James W. Sandy*
James W. Sandy
Ohio Bar No. 84246
3401 Tuttle Road, Suite 200
Cleveland, OH 44122
Phone: (216) 378-9905
jsandy@mcglinchey.com
*\*Notice of Special Appearance forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2025, I electronically filed the foregoing DEFENDANT DAEDONG-USA, INC.'S NOTICE OF REMOVAL with the Clerk of the Court using CM/ECF and served this day via email and United States mail, postage prepaid addressed to the following:

Sarah A. Knox, Esq.
*Hunter & Everage, PLLC*
P.O. Box 25555
Charlotte, NC 28229
Phone: (704) 377-9157
sak@hunter-everage.com

Leigh S. Montgomery, Esq.
*EKSM, LLP*
4200 Montrose Boulevard
Suite 200
Houston, TX 77006
Phone: (888) 350-3931
lmontgomery@eksm.com
service@eksm.com

THARRINGTON SMITH, L.L.P.

*/s/ Colin Shive*
Colin A. Shive
N.C. State Bar No. 43202